**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MAGALI REYNOSO,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:25-cv-188** |
| | § | |
| **AUSTIN TAPP, and** | § | |
| **CITY OF FARMERS BRANCH, TEXAS,** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Plaintiff, MAGALI REYNOSO, complaining of Defendants, AUSTIN TAPP and CITY OF FARMERS BRANCH, TEXAS, and for causes of action will respectfully show unto the Court as follows:

 

## SUMMARY

On January 24, 2023, City of Farmers Branch Police Officer Austin Tapp threw a protein shaker bottle filled with liquid at Magali Reynoso striking her in the face while Ms. Reynoso was not armed or presenting a threat to any officer or person at the time. On the day of the incident Defendant Tapp along with Farmers Branch Police Officers Britton, Getty, and Carillo had responded to a disturbance call by Ms. Reynoso involving Ms. Reynoso's son. During an internal affairs investigation into what happened to Ms. Reynoso, Tapp was found in violation of  "(1) **General Orders Section 100.31 (F)(1) Use of Force in Response to Resistance or Aggression**: Law enforcement officers are permitted to use the degree of force that is reasonably necessary to accomplish their lawful objectives and to overcome unlawful resistance and (2) **General Orders Section 100.31(H)(3) Response to Resistance**: Use of approved impact weapons may be used by an officer to gain compliance from a violently resisting subject or in self-defense or defense of a third party if lesser methods have failed or if circumstance warrant the immediate use of approved impact weapon." Tapp was also issued a counselling form and required to attend the Calibre Press Street Survival Course.

Magali Reynoso now files this lawsuit against Officer Tapp for violating her constitutional rights under the Fourth Amendment to the United States Constitution to be free from excessive force and, alternatively, against City of Famers Branch for the negligent use/misuse of tangible personal property under the Texas Tort Claims Act.[1]

## I.
## PARTIES

1.      Plaintiff Magali Reynoso is a resident of Dallas County, Texas.

---

[1] The internal affairs investigation was pursuant to personnel complaint number IA23-001.

2.      Defendant Austin Tapp is an individual residing in the City of Farmers Branch, Texas, and is an officer with the City of Famers Branch Police Department and may be served at his place of employment at the City of Farmers Branch Police Department located at 3723 Valley View Ln, Dallas, TX 75244, or wherever he may be found. Defendant Tapp is being sued in his individual capacity.

3.      Defendant City of Farmers Branch, Texas is a political subdivision of the State of Texas and may be served through the Farmers Branch City Manager, Ben Williamson, located at 13000 William Dodson Parkway, Farmers Branch, TX 75234 or wherever he may be found.

## II.
## JURISDICTION AND VENUE

4.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983 and supplemental jurisdiction over the state law claim under 28 U.S. Code § 1367.

5.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants reside in the Northern District of Texas and all of the causes of action accrued in the Northern District of Texas.

## III.
## FACTS AND ALLEGATIONS

6.      On January 24, 2023, City of Farmers Branch Police Officer Austin Tapp threw a protein shaker bottle filled with liquid at Magali Reynoso striking her in the face even though Ms. Reynoso was not suspected of any crime, was not armed, and was not presenting a threat to any officer or person at the time.

7.      On the day of the incident Officers Getty and Carillo responded to a disturbance call by Ms. Reynoso's involving her 15-year-old son.

8. Ms. Reynoso stated her son had left the location and she was unsure where he went.

9. Officers on the scene put out a description of Ms. Reynoso's son over the radio.

10. While Officer Getty was getting paperwork out of the squad car, Ms. Reynoso's son returned walking back towards the house.

11. Officer Getty and Officer Carillo began to verbally engage with Ms. Reynoso's son about the incidents with his family.

12. Defendant Officer Austin Tapp and Officer Britton arrived while Getty and Carillo were speaking with Ms. Reynoso's son.

13. Defendant Tapp and Officers Britton, Carillo, and Getty attempted to arrest Ms. Reynoso's son.

14. Tapp, Britton, Carillo, and Getty attempted to take Ms. Reynoso's down to the ground and place him in custody.

15. Defendant Tapp was able to control Ms. Reynoso's son by placing him in a Kimura position, a double joint arm lock technique that's used in martial arts to force a submission. The Kimura lock isolates the elbow and shoulder joints, allowing you to crank your opponent's arm, putting a huge amount of pressure on the shoulder.

16. Tapp held Ms. Reynoso's son down using his bodyweight, held onto his right wrist with his right hand, left arm under his arm and grabbed his right wrist with his left hand.

17. In the process of getting handcuffed, Ms. Reynoso's son started yelling, "Mom, mom! I can't breathe they are hurting me."

18. Ms. Reynoso approached out of concern about her son being hurt and not being able to breathe but stayed a safe distance away from the officers.

19. During the use of force investigation, Officer Getty stated she believed Ms. Reynoso and her family members were about "ten feet" from her, Defendant Tapp, Officer Carillo, Officer Britton, and Ms. Reynoso's son, and she "did not feel threatened since the other officer were there."

20. Defendant Officer Tapp grabbed Ms. Reynoso's son's protein shaker bottle which was filled with liquid and threw it toward Ms. Reynoso.

21. The shaker bottle struck Ms. Reynoso on the right side of her face just under her eye.

22. When the bottle struck Ms. Reynoso, she fell backwards onto the ground.

23. When Ms. Reynoso hit the ground, she blacked out for a few seconds.

**Defendant City of Farmers Branch had Actual Notice of Ms. Reynoso's Claims**

24. On January 23, 2023, Kathleen Hunda Administrative Assistant II, City Manager's Office for the City of Farmer' Branch emailed Benjamin Williamson, City Manager for the City of Farmers Branch, stating, "Noe Segura came in to complain about the Police Department. He stated that while his 15yr old grandson was being arrested the police officer held him down with one foot on his chest. The officer (they did not know the name of the officer) did not loosen his grip when his grandson stated he could not breathe. There was a separate altercation in which Officer Tapp threw a cup at their granddaughter and caused her to bleed. He showed me a photo. This is the information he shared with me but I feel like there's more to this story. He's a Spanish Speaker. Mr. Segura went to PD and filed a complaint with Officer Tapp's supervisor who was not helpful so he has asked to speak with the City Manager. I told him that I would forward his concern to you. He provided his granddaughter's number to better translate his story for him." (emphasis added).

25.     This email includes Ms. Reynoso's name and phone number as well as Mr. Segura's name, phone number, and address.[2] Below is a screen capture of this email.

Ben,

Noe Segura came in to complain about the Police Department. He stated that while his 15yr old grandson was being arrested the police officer held him down with one foot on his chest. The officer (they did not know the name of the officer) did not loosen his grip when his grandson stated he could not breathe. There was a separate altercation in which Officer Tapp threw a metal cup at their granddaughter and caused her to bleed. He showed me a photo. This is the information he shared with me but I feel like there's more to this story. He's a Spanish speaker.

Mr. Segura went to PD and filed a complaint with Officer Tapp's supervisor who was not helpful so he has asked to speak with the City Manager. I told him that I would forward his concern to you. He provided his granddaughters number to better translate his story for him.

26.     That same day City Manager Benjamin Williamson forwarded Ms. Hunda's email to Jay Siegel Assistant Chief of Police for the Farmers Branch Police Department.

27.     An internal affairs investigation into the incident immediately followed.

28.     The allegations against Defendant Tapp were sustained.

**The Allegations Against Defendant Tapp Were Sustained
During the Internal Affairs Investigation**

29.     During an internal affairs investigation, Tapp was found in violation of  "(1) **General Orders Section 100.31 (F)(1)** Use of Force in Response to Resistance or Aggression: Law enforcement officers are permitted to use the degree of force that is reasonably necessary to accomplish their lawful objectives and to overcome unlawful resistance and (2) **General Orders Section 100.31(H)(3) Response to Resistance**: Use of approved impact weapons may be used by an officer to gain compliance from a violently resisting subject or in self-defense or defense of a third party if lesser methods have failed or if circumstance warrant the immediate use of approved impact weapon."

---

[2] That information is not included in this lawsuit to protect the privacy of Ms. Reynoso and Mr. Segura.

30.    Tapp was also issued a counselling form and required to attend the Calibre Press Street Survival Course as the result of the personnel complaint filed against him.

31.    Below are screen captures from the internal affairs investigation showing that the allegations against Defendant Tapp were **sustained.**[3]

**FARMERS BRANCH POLICE DEPARTMENT**
**PERSONNEL COMPLAINT**

IA23-001
Number

Complainant: Lt. T. Eoff                                 Signature:

Residence Address & Zip:                              Phone: 972-919-9351

Business Address & Zip: Farmers Branch  Phone:

Filed Against: Ofc. Austin Tapp

Date:2/3/23    Time:    AM ☒ PM ☐ Location: 3723 Valley View Lane F.B., Texas

Complaint:

Charge 1: Violation of General Orders Section 100.31 (F)(1) Use of force in response to resistance or aggression: Law Enforcement Officers are permitted to use the degree of force that is reasonably necessary to accomplish their lawful objectives and to overcome any unlawful resistance.  To wit: Officer Tapp threw a full protein bottle at a civilian striking her in the face, when she rapidly approached as officer were effecting an arrest.
Charge 2: Violation of General orders Section 100.31(H)(3) Response to Resistance use of approved impact weapons may be used by an officer to gain compliance from a violently resisting subject or in self-defense or defense of a third party if lesser methods have failed or if circumstance warrant the immediate use of approved impact weapon. To wit: Officer Tapp used a full protein shaker as an impact weapon when he threw it at a civilian striking her in the face.

One, but not both of the following to be checked by Supervisor:

☐    By authority of the Police Chief, you are ordered to submit a written statement in response to the allegation by   AM☐ PM☒,   DATE, to Lt. Eoff          (See attached Administrative Investigative Warning).

☐    If you wish to dispute this allegation, you have until 3:26 AM☐ PM☒, 2/2/2023     , to submit a written statement in response to the allegation.

Served by signature

I hereby acknowledge a copy of the complaint:

Signed:                                      Date: 2-3-23          Time: 3:38 PM

COMPLAINT CLASSIFICATION:

☐    Unfounded (Allegation is false or not factual)
☐    Exonerated (Incident complained of occurred, but was lawful and proper)
☐    Not Sustained (Insufficient evidence either to prove or disapprove allegation)
☒    Sustained (Allegation is supported by sufficient evidence)

Investigated by: T. Eoff                    Date:              Time:

Disciplinary Action: - Counselling Form  / Calibre Street survival course May 10th - 11th

Signature: A. Tapp                                        Date: 2-13-23
Copy given to officer by: T. Eoff                         Date:
Rev 9/2005

---

[3] Defendant Tapp was first served with a charge of violation of General Orders Section 200.03(B)(7) Professional Conduct and Personal Bearing Unnecessary Violence or Harassment toward any person. This charge was amended to the following charge: Violation of General Orders section 100.31(F)(1) Use of Force in Response to Resistance or Aggression Options: Law enforcement officers are permitted to use the degree of force that is reasonably necessary to accomplish their lawful objective and to overcome any unlawful resistance.

**FARMERS BRANCH POLICE DEPARTMENT**
**PERSONNEL COMPLAINT**

IA23-001
Number

Complainant: Lt. T. Eoff                    Signature:

Residence Address & Zip:                    Phone: 972-919-9351

Business Address & Zip: Farmers Branch   Phone: _____

Filed Against: Ofc. Austin Tapp

Date:01/26/23  Time:   AM ☒ PM ☐ Location: 3723 Valley View Lane F.B., Texas

---

Complaint:

Charge 1: Violation of General Orders Section 200.03(B)(7) Professional Conduct and Personal Bearing Unnecessary violence or harassment toward any person  To wit: Officer Tapp threw a full protein bottle at a civilian striking her in the face, when she rapidly approached as officer were effecting an arrest.
Charge 2: Violation of General orders Section 100.31(H)(3) Response to Resistance use of approved impact weapons may be used by an officer to gain compliance from a violently resisting subject or in self-defense or defense of a third party if lesser methods have failed or if circumstance warrant the immediate use of approved impact weapon. To wit: Officer Tapp used a full protein shaker as an impact weapon when he threw it at a civilian striking her in the face.

One, but not both of the following to be checked by Supervisor:

☒ By authority of the Police Chief, you are ordered to submit a written statement in response to the allegation by 12:30 AM☐ PM☒,   DATE 01/26/2023, to Lt. Eoff              (See attached Administrative Investigative Warning).

☐ If you wish to dispute this allegation, you have until     AM☐ PM☐,     , 20     , to submit a written statement in response to the allegation.

Served by – signature

I hereby acknowledge a copy of the complaint:

Signed: _____      Date: 1-26-23        Time: 10:16om

COMPLAINT CLASSIFICATION:

☐ Unfounded (Allegation is false or not factual)
☐ Exonerated (incident complained of occurred, but was lawful and proper)
☐ Not Sustained (Insufficient evidence either to prove or disapprove allegation)
☐ Sustained (Allegation is supported by sufficient evidence)

Investigated by: _____      Date:              Time:

Disciplinary Action:
_____
_____
_____

Signature: _____                  Date:
Copy given to officer by: _____         Date:
Rev 9/2005



**FARMERS BRANCH**

**NOTICE OF INTENT TO TAKE DISCIPLINARY ACTION**

**DATE:**    02/13/2023

**TO:**    Officer Tapp

**FROM:**    Interim Chief Jay Siegel

This is a notice to take disciplinary action relative to your employment as a police officer with the City of Farmers Branch, Texas in accordance with and pursuant to the City's Personnel Rules (Personnel Manual), the Police Department General Orders, and the law governing such procedures.

Based on the information received as a result of an internal affairs investigation, as evidenced by attached copy of a personnel complaint form, which has been submitted to you, I have decided to take disciplinary action.

With the information the investigation revealed, it is my intention to issue a counselling form and have you attend Calibre Press Street Survival Course May 10th and 11th.

Please acknowledge receipt of this notice and the attached personnel complaint. You have an opportunity to respond in person and in writing to this charge at a hearing to be conducted by Interim Chief Jay Siegel.

Issued this 13 day of February 2023.

Jay Siegel, Interim Chief of Police

Accepted this 13 day of July 2023, at 2 o'clock.

Officer

Attachment:    Copy of Personnel Complaint



**FARMERS BRANCH**

**DATE:**    02/13/2023

**TO:**    Officer Tapp

**FROM:**    Interim Chief Jay Siegel

**SUBJECT:    NOTICE OF DISCIPLINARY ACTION**

Notice of disciplinary action to be taken.

On February 13, 2023, you were notified in writing of my intention to issue you a counselling form and have you attend Calibre Press Street Survival Course May 10th and 11th, as the result of the personnel complaint number IA23-001 filed against you dated January 26, 2023.

On February 13, 2023, a meeting was held in the office of the Chief of Police concerning pending disciplinary action against you. After reviewing all information in this investigation and considering information from you, I have concluded that you should receive a counselling form and attend Calibre Press Street Survival Course May 10th and 11th for violation of General Orders Section 100.31 (F)(1) Use of Force in Response to Resistance or Aggression: Law enforcement officers are permitted to use the degree of force that is reasonably necessary to accomplish their lawful objectives and to overcome any unlawful resistance and Violation of General Orders Section 100.31(H)(3) Response to Resistance: Use of approved impact weapons may be used by an officer to gain compliance from a violently resisting subject or in self-defense or defense of a third party if lesser methods have failed or if circumstance warrant the immediate use of approved impact weapon.

.

Section 5 of the City's Personnel Manual "Employee Conduct & Concerns" sets out the procedure for an appeal of my decision to the City Manager.

Jay Siegel, Interim Chief of Police

Accepted this 13 day of Feb., 2023, at 2:19 pm o'clock.

SIGNED    #1840

32.    During the internal affairs investigation Defendant Tapp stated he threw the bottle as a diversion not meaning to hit Reynoso.

33.    Defendant Tapp also claimed the shaker bottle he threw was empty.

34.    When Defendant Tapp intentionally threw a protein shaker bottle filled with liquid at Magali Reynoso striking her in the face Ms. Reynoso was not holding a weapon as she did not have anything in either of her hands.

35.    When Defendant Tapp intentionally threw a protein shaker bottle filled with liquid at Magali Reynoso, striking her in the face, Ms. Reynoso had not threatened Defendant Tapp or any other person.

36.    Moreover, during the use of force investigation, Officer Getty stated she believed Ms. Reynoso and her family members were about "ten feet" from her, Defendant Tapp, Officer Carillo, Officer Britton, and Ms. Reynoso's son, and she "did not feel threatened since the other officer were there."

37.    When Defendant Tapp intentionally threw a protein shaker bottle filled with liquid at Magali Reynoso, striking her in the face, Ms. Reynoso was not suspected of committing any crime and in fact she was the one that had requested police assistance.

38.    Further, prior to Defendant Tapp intentionally throwing a protein shaker bottle filled with liquid at Magali Reynoso, striking her in the face, he did not give multiple commands for Ms. Reynoso to get back.

39.    According to the internal affairs report, "based on Ofc. Tapp and Ofc. Britton's actions, they believed that dialogue was the first level of force needed to stop the aggression. **However, Ofc. Tapp did not allow time for the verbal commands to be effective. Instead he threw a plastic shaker bottle in the direction of Magali Reynoso as a distraction within one second of his first command to get back**. The shaker bottle struck Magali Reynoso, reportedly causing her to receive four stitches and a swollen eye. Based upon the written testimony, and the

video evidence there is sufficient evidence to prove that Officer Tapp violated the use of force options described in Section 100.31(F)(1). Officer Tapp escalated the use of force option to an impact weapon. The use of an impact weapon at this point of the encounter was unreasonable for two reasons: (1) **Officer Tapp stated that he gave multiple verbal commands before he threw the shaker bottle. However video evidence shows that almost immediately upon giving his first verbal command, he threw the bottle not allowing Reynoso time to obey the command (2) Throwing an object towards someone as a distraction is not an approved use of force option."**

40.    When he struck Ms. Reynoso with the protein shaker bottle filled with liquid, Defendant Tapp was acting under color of law, as he was on duty as a deputy with the City of Farmers Branch Police Department, in full uniform who detained Ms. Reynoso by striking her with a plastic shaker bottle.

### Defendant Tapp Negligently Struck Ms. Reynoso

41.    Alternatively, and pursuant to Fed. R. Civ. P. 8(d), Plaintiff pleads that Defendant Tapp negligently threw tangible personal property to wit: a protein shaker bottle filled with liquid which struck Ms. Reynoso.

42.    A governmental unit is liable under the Texas Tort Claims Act "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment." Tex. Civ. Prac. & Rem. Code § 101.106(f).

43.    The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5).

44. "An official acts within the scope of his authority if he is discharging the duties generally assigned to him." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004).

45. That is, an employee's scope of authority extends to job duties to which the official has been assigned, even if the official errs in completing the task. *Id*.

46. At the time of Ms. Reynoso's injuries, defendant employee was responding to a call for police assistance, which was in the course and scope of his employment as a police officer with the City of Farmers Branch Police Department.

47. The employee did not act in good faith to perform his duties when he negligently threw a protein shaker bottle filled with liquid by failing to anticipate and account for Ms. Reynoso in the direction he threw the shaker bottle, which resulted in him striking Ms. Reynoso.

48. According to the internal affairs report Defendant Tapp "stated that he only thew the protein shaker bottle to cause a diversion and **did not mean to hit Reynoso**. Ofc. Tapp's decision to throw the plastic shaker turned it into an impact weapon. **Ofc. Tapp's intentions may not have been to hit Reynoso with the shaker bottle, but nevertheless it did, and he ought to have been aware of the risk that it could.**"

49. The report continues, "Officers of the Farmers Branch Police Department are not trained to throw objects at approaching people. The shaker bottle is not an approved impact weapon. **A reasonable officer, given the same set of circumstances, should not have thrown the plastic bottle as a distraction.**"

50. The employee's negligence was the result of the employee throwing a protein shaker bottle filled with liquid which was contemporaneous with plaintiff's personal injury.

51.     Had the employee acted reasonably, used caution, and properly anticipated and accounted for Ms. Reynoso, then the injury would not have resulted.

52.     Here, Mr. Reynoso suffered from severe physical injuries caused by the negligent use of tangible personal property to wit: a protein shaker bottle filled with liquid.

53.     These injuries were not the result of any other cause.

### Defendant Tapp caused Ms. Reynoso to Suffer from Severe Injuries

54.     As a result of Defendant Tapp striking Ms. Reynoso with a plastic shaker bottle filled with liquid Ms. Reynoso had to go to the emergency room for her right eye as it became painfully red and swollen.

55.     Ms. Reynoso's received four stitches and was not able to go to work because she could not see out of her right eye.

56.     Ms. Reynoso was diagnosed with a fracture of her orbital floor by an eye specialist.

57.     Ms. Reynoso suffered symptoms including but not limited to tenderness on her right eyelid, numbness on the right side of her face, constant headaches, and nasal discharge as a symptom of sinusitis from her injuries.

58.     Ms. Reynoso sustained severe physical injuries and suffered immense pain and suffering and mental anguish as a result of Defendant Tapp striking her with the plastic shaker bottle filled with liquid.

59.     These injuries were directly and proximately caused by Defendant Tapp striking Ms. Reynoso with the plastic shaker bottle filled with liquid and were not caused by any other means.

**IV.**
**CAUSES OF ACTION**

**Count One**

**Excessive Use of Force**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Austin Tapp**

60.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

61.     Acting under the color of law, Defendant Austin Tapp deprived Ms. Reynoso of the rights and privileges secured to her by the Fourth Amendment to the United States Constitution by way of the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

62.     Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

63.     The amount of force used by Defendant Tapp against Ms. Reynoso as described above, specifically but not limited to, when Defendant Tapp intentionally threw a protein shaker bottle filled with liquid at Ms. Reynoso striking her in the face when Ms. Reynoso was not resisting arrest, not evading arrest, and not threatening anyone, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Ms. Reynoso.

64.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

65.     A constitutional violation occurs when an officer tases, **strikes**, or violently tackles an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) (emphasis added).

66.    In the process of getting handcuffed, Ms. Reynoso's son started yelling, "Mom, mom! I can't breathe they are hurting me."

67.    Ms. Reynoso approached out of concern about her son being hurt and not being able to breathe but stayed a safe distance away from the officers.

68.    Defendant Officer Tapp grabbed Ms. Reynoso's son's protein shaker bottle which was filled with liquid and threw it toward Ms. Reynoso.

69.    The shaker bottle struck Ms. Reynoso on the right side of her face just under her eye.

70.    Here, at the time Defendant Tapp threw the shaker bottle which was filled with liquid toward Ms. Reynoso striking her in the face Ms. Reynoso was not suspected of committing any crime and in fact she was the complainant that called for police assistance.

71.    At no point prior to Defendant Tapp throwing the shaker bottle which was filled with liquid toward Ms. Reynoso striking her in the face did Ms. Reynoso threaten any person as she never made any threatening statements, never made any threatening gestures or postures toward anyone, never raised her voice, and was not holding a weapon.

72.    At no point prior to Defendant Tapp throwing the shaker bottle which was filled with liquid toward Ms. Reynoso striking her did Ms. Reynoso resist arrest as she was never arrested and in fact, she was the complainant that called for police assistance.

73.    At no point prior to Defendant Tapp throwing the shaker bottle which was filled with liquid toward Ms. Reynoso striking her did Ms. Reynoso evade arrest as she was never arrested and in fact, she was the complainant that called for police assistance.

74.    The speed with which an officer resorts to force, *Trammell v. Fruge*, 868 F.3d 332, 342 (5th Cir. 2017), and the failure of the officer "to use physical skill, negotiation, or even

commands" before applying such force, *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012), weigh in favor of finding that the use of force was excessive to the need. *Pena v. City of Rio Grande City, Texas*, 816 F. App'x 966, 973 (5th Cir. 2020).

75.    In *Trammell*, the Fifth Circuit found that "given that **only three seconds elapsed** between Officer Fruge's initial request that Trammel place his hands behind his back and when Officers Fruge, Garza, and Neveu tackled Trammel, we find that a reasonable jury could infer that the officers used very little, if any, negotiation before resorting to physical violence, and that the officers' conduct did not constitute the required "measured and ascending" actions calibrated to Trammel's conduct." (emphasis added) *Trammell*, 868 F.3d at 342.

76.    According to the internal affairs investigation "within one second of giving a verbal command to get back, Tapp threw the plastic bottle, not allowing Ms. Reynoso time to obey the command."

77.    Just as *Trammell*, where the Fifth Circuit found that a jury could determine that using force after only three seconds as unreasonable, a jury could find that Defendant Tapp throwing the protein shaker bottle filled with liquid (only within one second of giving a verbal command to get back, not allowing Ms. Reynoso time to obey the command) was unreasonable and an excessive use of force. *Id.*

78.    Since Ms. Reynoso was not suspected of any offense this "militates" against the use of force. *Trammell*, 868 F.3d 332 at 340 citing *Reyes v. Bridgwater*, 362 Fed. Appx. 403, 407 n.5 (5th Cir. 2010) (finding the "severity" factor from *Graham* "militated" against a use of force where the alleged crime was a misdemeanor)).

79.    A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Ms. Reynoso who was not threatening any officer or other person,

was not suspected of any criminal offense, was not attempting to flee, was not resisting arrest, and who the use of force of Defendant throwing the plastic shaker bottle which was filled with liquid in the direction of Ms. Reynoso striking her was not warranted.

80.     A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Ms. Reynoso who was not threatening any officer or other person, was not suspected of any criminal offense, was not attempting to flee, was not resisting arrest, and who the use of force of Defendant throwing the shaker bottle which was filled with liquid toward Ms. Reynoso striking was not warranted.

81.     A reasonable officer in Defendant's position would know that throwing the shaker bottle which was filled with liquid toward Ms. Reynoso striking her was objectively unreasonable when Ms. Reynoso was not suspected of any crime was not attempting to flee, was not resisting arrest, and was not a threat, is clearly unreasonable and excessive.

82.     As a direct result of the force used against her by Defendant, Ms. Reynoso suffered physical injury, pain, and mental anguish, outlined in this lawsuit, for which she sues herein.

83.     These injuries were directly and proximately caused by Defendant Tapp throwing the shaker bottle which was filled with liquid toward Ms. Reynoso striking her and were not caused by any other means.

84.     At all times relevant to this lawsuit, Defendant Tapp was acting under color of law as he was on duty, in full uniform, utilizing his patrol vehicle.

**Count Two**

**INJURY BY THE NEGLIGENT USE OF PERSONAL PROPERTY**
**Pursuant to the Texas Tort Claims Act**
**Against Defendant City of Farmers Branch, Texas**

85.	Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

86.	This count is against Defendant City of Farmers Branch, Texas.

87.	Pursuant to Fed. R. Civ. P. 8(d), Plaintiff pleads this count in the alternative to Count I.

88.	Defendant City of Farmers Branch, Texas is a governmental unit, that employed Defendant Tapp to perform the role of police officer for the City of Farmers Branch.

89.	Section 101.101(a) of the Texas Tort Claims Act provides that a "governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." *Tex. Civ. Prac. & Rem. Code* § 101.101(a).

90.	The notice must reasonably describe "(1) the damage or injury claimed; (2) the time and place of the incident; (3) and the incident." *Tex. Civ. Prac. & Rem. Code* § 101.101(a).

91.	The Texas Tort Claims Act notice requirements do not apply if the governmental unit has "actual notice" that the claimant was injured. *Tex. Civ. Prac. & Rem. Code Id.* § 101.101(c).

92.	The Texas Supreme Court has held that actual notice to a governmental unit requires knowledge of "(1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

93.     Actual notice may be imputed only when an agent or representative charged with a duty to investigate and report to the governmental unit receives the three elements of actual notice. *See Gonzalez v. El Paso Hosp. Dist*., 940 S.W.2d 793, 795-96 (Tex.App.-El Paso 1997, no writ); *Dinh v. Harris County Hosp. Dist*., 896 S.W.2d 248, 253 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.)).

94.     In *Ryan*, Plaintiff Ryan sued for negligence due to injuries sustained during a slip and fall on an icy sidewalk at Dallas-Fort Worth Internal Airport ("DFW"). *Dallas-Fort Worth Int'l Airport Bd. v. Ryan*, 52 S.W.3d 426, 429 (Tex. App. 2001).

95.     Ryan alleged she provide DFW actual notice of her injuries on or about January 21, 1999, when Vicki M. Johnson, a legal staff assistant with DFW, acknowledged receipt of correspondence from Ryan regarding the December 23, 1998, incident. *Ryan*, 52 S.W.3d at 429.

96.     "By letter dated January 14, 1999, Ryan wrote: Please send a copy of the report that was generated on 12–23–98 at DFW airport outside gate B30 at approximately 4:00 P.M. I am the victim. I slipped on some ice and broke my knee cap. Send to me at: Marianne Ryan 810 Emerald Sound Boulevard Oak Point, Texas, 15068–2200, $4.00 check and SASE enclosed." *Id*.

97.     DFW argued that the letter did not support a finding of actual notice under section 101.101(c) because it did not inform DFW of its alleged fault in causing Ryan's injury; however, the court disagreed and stated Ryan's letter, received by an assistant in DFW's legal department, was sufficient to satisfy the requirements of actual notice because it notified DFW of the injury and the parties involved, as well as its alleged fault in causing the injury. *Id*.

98.     According to the Court:

"The letter stated, "I am the victim. I slipped on some ice and broke my knee cap." [Emphasis added.] Accordingly, we conclude that DFW's receipt of Ryan's letter by its legal department is sufficient to prove that DFW had actual notice of Ryan's claims against it. We believe our holding to be in line with the purpose of the notice

requirements, and we decline to foster litigiousness by forcing injured parties to immediately retain legal counsel in order to preserve their claims in the face of hyper-technical notice provisions. Here, Ryan's letter adequately conveyed to DFW its possible culpability for her injuries." *Id*.

99.    In *Mann,* defendants sought dismissal of claims pursuant to the Texas Tort Claims Act for claims for failure to provide notice; however, the court found that the Sheriff had actual notice of an inmate's death since "the Sheriff's Office and jail officials conducted a complete and thorough investigation of [inmate] Mann's death immediately. Statements were taken from the jailers who were on duty, an autopsy was performed and the Sheriff had actual notice of the death. Defendants' motion for dismissal on this point is DENIED." *Mann ex rel. Terrazas v. Lopez,* 404 F. Supp. 2d 932, 940 (W.D. Tex. 2005); (citing *Mutrux v. Cameron County, Tex.*, 809 F.Supp. 510 (S.D.Tex.1992)(stating "The Corpus Christi Court of Appeals in *Bourne v. Nueces County Hospital District*, 749 S.W.2d 630 (Tex.Ct.App.—Corpus Christi 1988—writ Ref. N.R.E.) held that the question of actual notice was a fact issue. As the Corpus Court stated in *Cavazos v. City of Mission*, 797 S.W.2d 268, 271 (Tex.Ct.App.—Corpus Christi 1990—no writ history) "[t]he purpose of the notice of claim's requirement is to ensure that claims are promptly reported and that a city has an opportunity to investigate the merits of a claim while the facts are fresh." Cameron County conducted a complete and thorough investigation of William Mutrux's death immediately. Statements were taken from the jailers who were on duty, an autopsy was performed and the County had actual notice of the death. To dismiss Plaintiff's case on the basis of non-compliance with § 101.101(a) would be an exercise in formalism, not in keeping with the Texas Supreme Court's mandate to construe the Tort Claims Act liberally.))"

100.    Defendant City of Farmers Branch, Texas, had actual notice of Plaintiff's claim for the injuries sustained by Ms. Reynoso as a result of Defendant Tapp striking her with a plastic shaker bottle as evidenced by the email correspondence on January 23, 2023 between Kathleen

Hunda, the Administrative Assistant II for the City Manager's Office for the City of Farmer'

Branch, and Benjamin Williamson, the City Manager for the City of Farmers Branch, stating "Noe

Segura came in to complaint about the Police Department. He stated that while his 15yr old

grandson was being arrested the police officer held him down with one foot on his chest. The

officer (they did not know the name of the officer) did not loosen his grip when his grandson stated

he could not breathe. There was a separate altercation in which Officer Tapp threw a cup at their

granddaughter and caused her to bleed. He showed me a photo. This is the information he shared

with me but I feel like there's more to this story. He's a Spanish Speaker. Mr. Segura went to PD

and filed a complaint with Officer Tapp's supervisor who was not helpful so he has asked to speak

with the City Manager. I told him that I would forward his concern to you. He provided his

granddaughter's number to better translate his story for him."

101.    This email includes Ms. Reynoso's name and phone number as well as Mr. Segura's

name, phone number, and address, which are not included in this publicly filed document to protect

Mr. Segura and Ms. Reynoso.

102.    That same day Benjamin Williamson forwarded Ms. Hunda's email to Jay Siegel

Assistant Chief of Police for the Farmers Branch Police Department.

103.    Additionally, the City of Famers Branch had actual notice as evidence by the

internal affairs investigation showing that the allegations against Defendant Tapp were sustained.

104.    Similar to cases finding actual notice the correspondence between Kathleen Hunda,

Benjamin Williamson, and Jay Siegel, as well as the resulting internal affairs investigation in

which the allegations against Defendant Tapp were sustained is unequivocal evidence that an agent

or representative charged with a duty to investigate and report to the City of Farmers Branch

received the three elements of actual notice. *See Gonzalez.*, 940 S.W.2d at 795-96F; *Dinh*, 896 S.W.2d at 253.

107. Thus, the City of Farmers Branch had knowledge of Ms. Reynoso's injury; (2) the City of Farmers Branch employee's alleged fault producing or contributing to Ms. Reynoso's injury, and (3) the identity of the parties involved.

106. Accordingly, the City of Farmers Branch had actual notice under the Texas Tort Claims Act. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); see *Dallas–Fort Worth Int'l Airport Bd. v. Ryan*, 52 S.W.3d 426, 429 (Tex.App.—Fort Worth 2001, no pet.) (finding sufficient actual notice where plaintiff sent a letter notifying defendant of the injury, the parties involved, and its alleged fault in causing the injury).

107. At the time of Ms. Reynoso's injuries, defendant employee was responding to a call for police assistance, which was in the course and scope of his employment as a police officer with the City of Farmers Branch Police Department.

108. The employee did not act in good faith to perform his duties when he negligently threw a protein shaker bottle filled with liquid by failing to anticipate and account for Ms. Reynoso in the direction he threw the shaker bottle, which resulted in him striking Ms. Reynoso.

109. According to the internal affairs report Defendant Tapp "stated that he only thew the plastic shaker bottle to cause a diversion and **did not mean to hit Reynoso**. Ofc. Tapp's decision to throw the plastic shaker turned it into an impact weapon. **Ofc. Tapp's intentions may not have been to hit Reynoso with the shaker bottle, but nevertheless it did, and he ought to have been aware of the risk that it could.**"

110. The report continues, "Officers of the Farmers Branch Police Department are not trained to throw objects at approaching people. The shaker bottle is not an approved impact

weapon. **A reasonable officer, given the same set of circumstances, should not have thrown the plastic bottle as a distraction.**"

111.    The employee's negligence was the result of the employee throwing a protein shaker bottle filled with liquid which was contemporaneous with plaintiff's personal injury.

112.    Had the employee acted reasonably, used caution, and properly anticipated and accounted for Ms. Reynoso, then the injury would not have resulted.

113.    The employee would be personally liable to plaintiff under Texas law for negligently throwing a plastic shaker bottle filled with liquid and striking Ms. Reynoso.

114.    The employee negligently throwing a plastic shaker bottle filled with liquid proximately caused injury, which resulted in the following damages: physical injuries, physical pain and suffering, permanent physical disfigurement, and mental and emotional anguish.

115.    Plaintiff seeks recovery of damages within the jurisdictional limits of this Court.

## V.
## PUNITIVE DAMAGES

116.    Ms. Reynoso repeats and re-alleges each and every allegation contained in Count I, as if fully repeated herein.

117.    When viewed objectively from the standpoint of Defendant Tapp, at the time of the occurrence, said Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

118.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Tapp which was recklessly or callously indifferent to Ms. Reynoso's constitutionally protected rights, Ms. Reynoso is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court for Defendant Tapp's actions under Count I of this Complaint.

## VI.
## <u>DAMAGES</u>

119.   Ms. Reynoso repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

120.   Ms. Reynoso's injuries were a foreseeable event, which were directly and proximately caused by the use of excessive force by Defendant Tapp against Ms. Reynoso, or alternatively, by the negligence of Defendant City of Farmers Branch employee, Defendant Tapp.

121.   As a result, Ms. Reynoso is entitled to recover all actual damages allowed by law. Ms. Reynoso contends Defendant Tapp's conduct with regard to Count I constitutes malice, evil intent, or reckless or callous indifference to her federally protected rights. Thus, Ms. Reynoso is entitled to punitive damages against Defendant Tapp with regard to Count I.

122.   As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

     a.   Actual damages;
     b.   Physical injuries suffered by Ms. Reynoso;
     c.   Pain and suffering suffered by Ms. Reynoso;
     d.   Mental anguish and emotional distress suffered by Ms. Reynoso;
     e.   Permanent physical disfigurement suffered by Ms. Reynoso;
     f.   Prejudgment interest;
     g.   Post judgment interest; and
     h.   Costs of Court.

123.   With regard to Count I, pursuant to 42 U.S.C. § 1983 and § 1988, Ms. Reynoso seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## <u>ATTORNEY'S FEES</u>

124.   With regard to Count I, if Ms. Reynoso prevails in this action, by settlement or otherwise, Ms. Reynoso is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

125. Ms. Reynoso respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Ms. Reynoso prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Ms. Reynoso prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully submitted,

*/s/James P. Roberts*
JAMES P. ROBERTS
Texas Bar No. 24105721

/s/ *Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196

*/s/ Breanta Boss*
BREANTA BOSS,
Texas Bar No. 24115768

PALMER PERLSTEIN
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
james@palmerperlstein.com
scott@palmerperlstein.com
breanta@palmerperlstein.com

ATTORNEYS FOR PLAINTIFF