UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAGALI REYNOSO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-0188-B |
| | § | |
| AUSTIN TAPP and CITY OF FARMERS | § | |
| BRANCH, TEXAS | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Farmers Branch's Motion to Dismiss (Doc. 19). For

the reasons set forth below, the Court **DENIES** Farmers Branch's Motion.

## I.

## BACKGROUND

This case arises from an encounter between Plaintiff Magali Reynoso and Farmers Branch

Police Officer Austin Tapp. In January 2023, Farmers Branch police officers responded to a

disturbance call made by Reynoso involving her fifteen-year-old son. Doc. 1, Compl. ¶ 7. Shortly

after arriving at Reynoso's home, officers verbally engaged Reynoso's son (hereinafter referred to as

"R.S.") about an incident involving his family. *Id.* ¶¶ 11-12. Then, for reasons unknown to the

Court, officers, including Officer Tapp, attempted to place R.S. under arrest. *Id.* ¶ 13.

While being taken to the ground and handcuffed, R.S. allegedly yelled to his mother that he

could not breathe and that the officers were hurting him. *Id.* ¶¶ 14,17. Out of concern for her son,

Reynoso approached the officers but asserts that she remained at a safe distance. *See id.* ¶ 18. As

alleged, Officer Tapp then grabbed R.S.'s protein shaker bottle—which was apparently within reach

and filled with liquid—and threw it toward Reynoso. *Id.* ¶ 20. The bottle struck Reynoso on the right side of her face just under her eye, causing her to fall backwards and briefly lose consciousness. *Id.* ¶¶ 21-23.

Following the incident, the Farmers Branch Police Department (the "Department") initiated an internal affairs investigation. *Id.* ¶¶ 26-27. The Department concluded that Officer Tapp escalated the use of force to an "impact weapon" without allowing Reynoso time to obey his verbal command to get back—a command he issued less than one second before throwing the bottle. *Id.* ¶¶ 31, 39. As a result, the Department issued Officer Tapp a counseling form and ordered him to attend remediation courses. *Id.* ¶ 31.

On January 24, 2025, the last day of the two-year statute of limitations for personal injury claims in Texas,[1] Reynoso filed this lawsuit against Officer Tapp and Farmers Branch. *See generally id.* Reynoso brings a claim against Officer Tapp under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. *Id.* ¶¶ 60-84. In the alternative, she brings a claim against Farmers Branch under the Texas Tort Claims Act ("TTCA")[2] for the negligent use of tangible personal property. *Id.* ¶¶ 85-115.

Four days after filing her Complaint, on January 28, 2025, Reynoso's process server attempted to serve Farmers Branch by delivering the summons and complaint to Quinn Mercado, a Senior Administrative Assistant in the City Manager's Office. Doc. 13, Aff. Service, 1. On March 26, 2025, Farmers Branch filed its first Motion to Dismiss, arguing, among other things, that

---

[1] Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).
[2] Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

Reynoso's service on Farmers Branch was defective because Mercado was not an official authorized to accept service under Texas law. Doc. 11, Mot. Dismiss, 3-4.

On October 1, 2025, this Court issued an Order finding that Reynoso's service was improper but determining that Reynoso had shown good cause for her failure to properly serve Farmers Branch. Doc. 15, Order, 4. The Court granted Reynoso twenty-one days to cure the defect. *Id.* Two days later, on October 3, 2025, Reynoso served City Secretary Erin Flores. Doc. 18, Aff. Service, 3.

Farmers Branch now moves to dismiss Reynoso's TTCA claim, arguing that: (1) Reynoso failed to exercise continuous diligence in serving Farmers Branch after the limitations period expired, such that her service does not relate back to the filing date and her claim is time-barred; and (2) Farmers Branch retains sovereign immunity because Officer Tapp's conduct constitutes an intentional tort. Doc. 19, Second Mot. Dismiss, 1-2. Reynoso opposes, contending, among other things, that she acted diligently and promptly corrected the service defect. Doc. 21, Resp., 2-6.

The Court considers the Motion below.

## II.

## LEGAL STANDARDS

Without proper service of process, the Court lacks personal jurisdiction over a defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). And under Federal Rule of Civil Procedure 12(b)(5), the Court may dismiss a case where service of process was insufficient. "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. DOJ*, 903 F.2d 1011, 1013 (5th Cir. 1990).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure

12(b)(6) authorizes a defendant to move for dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.

### ANALYSIS

The Court first addresses whether Reynoso properly served Farmers Branch with process sufficient to confer jurisdiction on the Court. The Court has jurisdiction because Reynoso effectively served Farmers Branch with process, and the service date relates back to the filing date. The Court then addresses whether the TTCA's limited waiver of immunity covers Reynoso's claim against Farmers Branch. Finding that it does, the Court denies Farmers Branch's Motion in full.

A.      *Reynoso Effectively Served Farmers Branch with Process and the Date of Service Relates Back to the Filing Date.*

As a preliminary matter, the Court considers whether Reynoso properly served Farmers Branch on her second attempt. The Court then addresses whether the service relates back to the

original filing date. Answering both in the affirmative, the Court denies Farmers Branch's first argument for dismissal.

    1.    <u>Reynoso Properly Served Farmers Branch with Process.</u>

To determine whether service was effective, the Court considers whether a defendant was served according to one of the methods provided in Federal Rule of Civil Procedure 4. For service on a local government, Rule 4 provides two methods: (1) by "delivering a copy of the summons and of the complaint to its chief executive officer" or (2) by "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." FED. R. CIV. P. 4(j)(2)(A)-(B).

Under Texas law, service upon an incorporated city, town, or village "may be served on the mayor, clerk, secretary, or treasurer." Tex. Civ. Prac. & Rem. Code Ann. § 17.024(b). Here, Reynoso served her Complaint on Farmers Branch's Secretary and Deputy Director of Administrative Services, Erin Flores, on October 3, 2025. Doc. 18, Aff. Service, 3. The Affidavit of Service satisfies the section 17.024(b) requirement of service upon a city secretary. Accordingly, the Court finds that Reynoso's October 3, 2025, service was proper under Rule 4(j)(2)(B).

    2.    <u>Reynoso's Date of Service Relates Back to Her Filing Date.</u>

Under Texas common law, when a lawsuit is filed within the limitations period but the defendant is served after limitations has expired, the date of service may relate back to the date of filing if the plaintiff was diligent in effectuating service. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). "Diligence is determined by asking whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009) (quotation marks and

citation omitted). The plaintiff has the burden to "present evidence regarding the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay." *Id.* (citation omitted). The diligence doctrine applies to state law claims brought in federal court under supplemental jurisdiction. *Saenz v. Keller Indus. of Tex., Inc.*, 951 F.2d 665, 667 (5th Cir. 1992) (citation omitted).

"That some time has elapsed between service efforts does not alone prove a lack of diligence." *Tex. State Univ. v. Tanner*, 689 S.W.3d 292, 299 (Tex. 2024); *see also Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007). Rather, "any delay in service after limitations has run requires an explanation—and not a conclusory or cursory one, either." *Tanner*, 689 S.W.3d at 299. A plaintiff did not act with diligence when "one or more lapses between service efforts are *unexplained* or *patently unreasonable*." *Id.* (citing *Gant*, 786 S.W.2d at 260) (emphasis added). The diligence rule serves to "avoid[] improper outcomes": it "delays limitations . . . when service is unusually hard, despite earnest efforts" but "will not do so . . . when timely service would have been simple or is pursued with indolence." *Id.* (citation modified).

Finally, timely service, including service effected diligently after the running of the limitations period, is jurisdictional in suits against governmental entities under Texas Government Code § 311.034. *Id.* at 300-01. The statute of limitations thus carries jurisdictional force in this suit against Farmers Branch. *Id.*

The relevant facts are not in dispute. Reynoso filed her lawsuit on January 24, 2025, the last day of the two-year statute of limitations. *See generally* Doc. 1, Compl. Four days later, on January 28, 2025, Reynoso's process server Tim Roberts attempted service on Farmers Branch by delivering the summons and complaint to Quinn Mercado, a Senior Administrative Assistant in the City

Manager's Office. Doc. 6, Aff. Service, 3; Doc. 21, Resp., 4. Roberts, according to his declaration, told Mercado that he had court documents for City Manager Ben Williamson for the City of Farmers Branch. Doc. 21-1, Resp. Ex. A. As Roberts recollects, Mercado responded, "hold on a minute," and "then [Mercado] said I'll go ahead and accept service." *Id.*

Farmers Branch filed its first Motion to Dismiss on March 26, 2025, arguing, among other things, that Reynoso's service on Farmers Branch was defective because Mercado was not an official authorized to accept service under Texas law. Doc. 11, Mot. Dismiss, 4. In response, Reynoso asserted that her initial service attempt was proper and refiled an affidavit of service identifying Mercado as the individual served. Doc. 12, Resp., 10-11; Doc 13, Aff. Service, 1. Thereafter, ruling on Farmers Branch's motion pended for approximately six months, during which time Reynoso made no further attempts to serve Farmers Branch. On October 1, 2025, this Court issued an order finding Reynoso's service improper but determining that Reynoso had shown "good cause" for her failure to serve Farmers Branch. Doc. 15, Order, 4.  Reynoso was permitted twenty-one days to cure the defect. *Id.* Two days later, on October 3, 2025, Reynoso properly served City Secretary Erin Flores. Doc. 18, Aff. Service, 3.

Thus, approximately eight months elapsed between the date Reynoso initially attempted service and the date Farmers Branch was properly served. The question is whether this eight-month gap precludes a finding of diligence as a matter of law based on the record before the Court. It does not.

Here, Farmers Branch argues that Reynoso has offered no explanation for the delay in properly effecting service and that, in any event, the approximately eight months that elapsed between filing and service are sufficient to find a lack of diligence as a matter of law. Doc. 19, Second

Mot. Dismiss, 7. Reynoso, on the other hand, contends that she, via her process server, reasonably relied on Mercado's representation that she could accept service on behalf of the City Manager. Doc. 21, Resp., 5-6. According to Reynoso, this reasonable reliance is sufficient to explain the initial delay, and any delay following Farmers Branch's original motion to dismiss is explained by the pendency of that motion before this Court. *Id.* at 6.

Texas courts have consistently held that "mere reliance on a process server" does not constitute due diligence because "it is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished." *Gonzalez v. Phx. Frozen Foods, Inc.*, 884 S.W.2d 587, 590 (Tex. App.—Corpus Christi 1994, no writ) (citations omitted); *see also Roberts v. Padre Island Brewing Co.*, 28 S.W.3d 618, 621 (Tex. App.—Corpus Christi 2000, no writ); *Jimenez v. Cnty. of Val Verde*, 993 S.W.2d 167, 168 (Tex. App.—San Antonio 1999, writ denied).

However, the Court notes a significant distinction between these authorities and the facts at hand. In the typical "reliance on the process server" case, the process server simply fails to accomplish service at all, or the plaintiff passively relies on the process server's assurances that service has been completed. *See Gonzalez*, 884 S.W.2d at 590 (process server withheld service due to confusion over payment); *Roberts*, 28 S.W.3d at 621 (process server never completed service; plaintiff did nothing beyond contacting the process server). Here, by contrast, the process server did not merely fail to serve the correct person through unreasonable error or inaction. Rather, the process server appeared at the correct office—the City Manager's Office—to serve Farmers Branch's chief executive officer, and an employee of the City Manager's Office affirmatively represented that she could accept service

on the City Manager's behalf. Though that representation turned out to be incorrect,[3] this distinction has doctrinal significance.

The Texas Supreme Court has cautioned that "the diligence gloss on the service requirement" exists in part to avoid "perverse incentives"—specifically, it prevents penalizing a plaintiff "when, purposefully or otherwise, the defendant or third parties make . . . service extremely difficult." *Tanner*, 689 S.W.3d at 299. Here, Mercado informed Reynoso's process server that she could accept service on the City Manager's behalf. *See* Doc. 21-1, Resp. Ex. A. Reynoso argues that dismissing the case on the basis of this reliance "would create a dangerous precedent, effectively incentivizing the City to direct its employees to mislead process servers thereby avoiding service and undermining judicial process." *See* Doc. 21, Resp., 6. The Court acknowledges this concern. Although nothing in the record suggests Farmers Branch acted in bad faith, an outcome that penalizes a plaintiff for crediting a government employee's affirmative (if unauthorized) representation could, in future cases, create precisely the kind of incentive that the Texas Supreme Court warned against in *Tanner*.

The Court therefore finds that Reynoso's reliance on Mercado's representation, although ultimately mistaken, provides an adequate explanation for the initial period of delay and does not constitute a "patently unreasonable" lapse between filing and service. *See Tanner*, 689 S.W.3d at 299 (citation omitted).

The Court further notes that Reynoso was not required to make additional attempts to serve Farmers Branch during the approximately six-month period in which Farmers Branch's first Motion to Dismiss was pending. During this period, Reynoso was actively litigating the service issue. In

---

[3] Only the "mayor, clerk, secretary, or treasurer" may accept service on behalf of a municipality. Tex. Civ. Prac. & Rem. Code Ann. § 17.024(b).

response to Farmers Branch's first Motion to Dismiss, Reynoso asserted that her January 28, 2025, service attempt was valid, filed responsive briefing, and refiled an affidavit of service. Although the Court ultimately found that service on Mercado was improper, the question was sufficiently debatable that the Court granted Reynoso good cause and leave to cure.

To require Reynoso to simultaneously litigate the validity of her initial service and pursue alternative service as a precaution would impose a standard of diligence beyond what the law requires. The diligence standard asks whether "the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances." *Ashley*, 293 S.W.3d at 179; *Proulx*, 235 S.W.3d at 216. An ordinarily prudent plaintiff who believed her service was valid and was defending that position in active litigation would not be expected to serve the defendant a second time as a hedge against an unfavorable ruling.

Moreover, once this Court issued its October 2025 Order finding service defective, Reynoso acted promptly to serve City Secretary Erin Flores just two days later. Accordingly, the Court finds that Reynoso exercised sufficient diligence such that her October 3, 2025, service relates back to the January 24, 2025, filing date. Because Reynoso's TTCA claim was filed on the last day of the limitations period and service relates back to that date, the claim is not time-barred. Farmers Branch's motion to dismiss on limitations grounds is therefore **DENIED**.

B.      *The TTCA's Intentional Tort Exception Does Not Bar Reynoso's Claim.*

The TTCA provides a limited waiver of sovereign immunity for personal injuries "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). That waiver does not extend, however, to "a claim . . . arising out of assault, battery,

false imprisonment, or any other intentional tort." *Id.* § 101.057(2). The threshold question in applying this exception is not whether injury was intended, but whether the claim *arises out of* an intentional tort. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 593-94 (Tex. 2014).

Farmers Branch contends that Reynoso's TTCA claim is foreclosed by § 101.057(2) because Officer Tapp's act of throwing the protein shaker bottle toward Reynoso constitutes an intentional tort as a matter of law. *See* Doc. 19, Second Mot. Dismiss, 9-10. Reynoso does not dispute that the TTCA's waiver is unavailable for intentional torts. Doc. 21, Resp., 6. And Reynoso's § 1983 claim against Officer Tapp specifically alleges that he "intentionally threw" the bottle. Doc. 1, Compl. ¶ 63. But, proceeding in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2), Reynoso separately asserts that Officer Tapp's conduct was negligent because he "fail[ed] to anticipate and account for Ms. Reynoso in the direction he threw the shaker bottle." *Id.* ¶ 47. The dispositive question is thus whether Reynoso's negligence theory is independently viable or whether it is subsumed by the intentional tort that underlies her excessive force claim.

Under Texas law, a governmental unit does not waive immunity merely because a plaintiff frames an intentional act as negligence. "[I]f a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." *Saenz v. City of El Paso*, 637 F. App'x 828, 830 (5th Cir. 2016) (quoting *Harris Cnty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005)). Nor may a plaintiff "avoid the bar of governmental immunity by describing essentially intentional conduct as an act of negligence." *Lopez-Rodriguez v. City of Levelland*, 100 F. App'x 272, 275 (5th Cir. 2004). Consistent with these principles, the intentional tort exception bars *even an alternative plea* of negligence "where the claim is based on 'the same conduct' as the intentional tort claim." *Saenz*, 637

F. App'x at 831 (other citation omitted) (quoting *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)).

The converse is equally well established: "there is no impediment to a proper characterization of negligence when the facts may show that officers in the course and scope of their duty improperly or negligently used tangible personal property and caused an injury or death." *Lopez-Rodriguez*, 100 F. App'x at 275. A negligence claim survives § 101.057(2) so long as it is "not based on the same facts/conduct as" the intentional tort claim. *Benavides v. Harris Cnty.*, No. 24-20457, 2025 WL 3270630, at *5 (5th Cir. Nov. 24, 2025).

These principles, read together, direct the Court's inquiry here. The question is whether Reynoso's alternative negligence claim is based on different facts and conduct than those underlying her § 1983 excessive force claim. Where the alleged facts reflect an indisputable intent to cause offensive bodily contact or the immediate apprehension thereof, a plaintiff may not replead the same act as negligence. *Petta*, 44 S.W.3d at 580. But where the officer's intent during the act is genuinely uncertain, an alternative plea of negligence is not merely artful pleading; it is the honest acknowledgment of that uncertainty. *Benavides*, 2025 WL 3270630, at *6.

*Saenz* establishes one pole of the inquiry: a claim that can only be seen as arising out of an intentional tort. There, an El Paso police officer shot and killed a man while that man was "handcuffed, unarmed, and restrained" in police custody. 637 F. App'x at 829. The plaintiff's negligence theory asserted no distinct facts—it rested entirely on the same police conduct during arrest that formed the basis of the excessive force claim. *Id.* at 831. The Fifth Circuit affirmed dismissal, reasoning that the plaintiff alleged underlying intentional conduct—"the use of force to

restrain"—and that this "intentional conduct foreclose[d] a TTCA claim" even if the ultimate shot was accidental. *Id.* at 830 n.1 (citing *Gordon*, 434 S.W.3d at 593-94).

*Gordon* explains that the intent that matters is the intent to make contact (or to cause apprehension of contact), not the intent to cause harm. The Texas Supreme Court went on to hold that, where a lawful arrest escalates into allegations of excessive force, "the claim is for battery alone" regardless of "whether the excessive force was intended or not." *Gordon*, 434 S.W.3d at 593. This is because battery, in the excessive-force context, does not require a specific intent to injure; it requires only that the defendant intend "bodily contact that is 'offensive.'" *Id.* at 592-93 (citations omitted).

*Benavides* establishes the other pole: a claim that, as pleaded, could arise out of an intentional tort or could arise out of negligence. In that case, the Fifth Circuit distinguished the facts presented from *Saenz* because the *Benavides* plaintiff's negligence count was predicated on *alternative fact allegations*—an accidental, unintended discharge of a firearm—distinct from those underlying the parallel excessive force claim. *See Benavides*, 2025 WL 3270630, at *4-6. The Fifth Circuit explained that the plaintiff's alternative negligence theory "reflect[ed] [his] understandable uncertainty (under the circumstances) regarding [the officer's] actual state of mind at the time his gun discharged," and that this uncertainty constituted a material fact precluding summary judgment. *Id.* at *6. The key distinction from *Saenz* was that, in *Benavides*, the plaintiff's excessive force claim and his negligence claim arose from materially different theories of conduct—intentional versus accidental discharge— such that only one could ultimately prevail, but both were legally cognizable at the pleading stage. *Id.* at *5-6.

Farmers Branch's central argument is that Officer Tapp's act of throwing the bottle was, by definition, an intentional tort rendering Reynoso's negligence theory indistinguishable from her

excessive force claim. Doc. 19, Second Mot. Dismiss, 10. Specifically, Farmers Branch invokes the doctrine of transferred intent, arguing that even if Officer Tapp intended only a "diversion" rather than actual contact, this was an intent to put Reynoso in apprehension of imminent bodily harm—independently qualifying as an intentional tort (assault) under Texas law—that became battery when the bottle struck her. *See id.* at 9-10.

Farmers Branch's theory, however, presupposes a disputed fact—that Officer Tapp's deliberate act in throwing the bottle was *intended* to put Reynoso in fear of imminent bodily contact. The transfer of intent between assault and battery operates only where there was tortious intent to begin with. *See* Restatement (Second) of Torts § 16 (1965) (stating that the transfer of intent between assault and battery applies where the actor acts "with the *intention* . . . of putting another in apprehension of either a harmful or offensive bodily contact, and such act causes a bodily contact to the other" (emphasis added)). The doctrine does not convert an act into an intentional tort merely because the actor's underlying conduct was volitional. If Officer Tapp did not intend to put Reynoso in fear of imminent bodily contact as necessary for assault, then there is no intent to transfer to form the basis for battery.

The Complaint supports an alternative construction—that Officer Tapp might have intended to aim for Reynoso or that he might have had no such intent when he threw the bottle. According to the internal affairs investigation incorporated into the Complaint, Officer Tapp stated that he threw the bottle "to cause a diversion" and "did not mean to hit Reynoso." Doc. 1, Compl. ¶ 48. The investigation itself concluded that "[t]hrowing an object towards someone as a distraction is not an approved use of force option," and that "[a] reasonable officer, given the same set of circumstances, should not have thrown the plastic bottle as a distraction." *Id.* ¶¶ 39, 49. On this

-14-

account, Officer Tapp's purpose may not have been to threaten Reynoso with bodily harm but rather was to redirect her attention away from her son's arrest. The bottle's trajectory toward Reynoso was incidental to that purpose—a consequence Officer Tapp "ought to have been aware of," *id.* ¶ 48, but did not intend.

The distinction is legally significant. Under the Texas Penal Code, which defines the elements of civil assault, assault requires that the actor "intentionally or knowingly threaten[] another with imminent bodily injury." § 22.01(a)(2). A diversion—an act intended to draw another person's attention, not to place them in fear—does not, without more, satisfy the requirement that the actor *intended* to cause apprehension of imminent bodily contact. Whether Officer Tapp's conduct crossed from an inattentive distraction into a deliberate threat is a factual question about his state of mind that cannot be resolved against Reynoso on the pleadings alone.

Accordingly, the Court finds that Reynoso pleaded a plausible, factually distinct basis for her negligence theory. Like the alternative negligence theory behind the tort in *Benavides*, Reynoso's alternative negligence count survives because Officer Tapp's intent at the moment he released the bottle is genuinely uncertain. On one construction of the alleged facts, Officer Tapp intended Reynoso to fear imminent contact, and the resulting bodily contact was an intentional tort; on the other, Officer Tapp intended only a distraction and his failure to account for Reynoso's position was negligence for which the TTCA waives immunity. Reynoso's Complaint addresses both constructions and presents a factual question that is not resolved at this stage.

Thus, Reynoso's TTCA claim arises out of alleged negligence—specifically, Officer Tapp's negligent use of tangible personal property in the course and scope of his employment. That characterization falls squarely within the TTCA's limited waiver of sovereign immunity. *See*

§ 101.021(2). Because the waiver applies and the intentional tort exception does not bar Reynoso's claim at this stage, the Court has jurisdiction to hear the TTCA claim against Farmers Branch. Farmers Branch's motion to dismiss Reynoso's TTCA claim on sovereign immunity grounds is accordingly **DENIED**.

## IV.

## CONCLUSION

For the foregoing reasons, Farmers Branch's Motion to Dismiss (Doc. 19) is **DENIED** in its entirety. Reynoso's TTCA negligent-use-of-tangible-property claim against Farmers Branch will proceed.

**SO ORDERED.**

**SIGNED: June 9, 2026.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE